THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| MOSHANNON VALLEY CITIZENS, INC. t/a PHILLPSBURG AREA HOSPITAL | : : : : : | CHAPTER 11 |
| | : | CASE NO. 1-06-bk-00095-MDF |
| Debtor-in-Possession | : : : | |
| MOSHANNON VALLEY CITIZENS INC. t/a PHILLPSBURG AREA HOSPITAL | : : : : | ADVERSARY NO. 1-07-00176-MDF |
| Plaintiff | : : | |
| v. | : : | |
| ROSEWOOD REAL ESTATE, INC., LAWRENCE G. ADAMS, M.D., PHILIPSBURG REGIONAL MEDICAL CENTER and JOHN DOE ENTITIES 1-100 | : : : : : : | |
| Defendants | : | |

## OPINION

Before me is the Complaint filed by Moshannon Valley Citizens, Inc. ("Debtor" or "Plaintiff") seeking a preliminary injunction against Rosewood Real Estate, Inc., Lawrence G. Adams, M.D., Philipsburg Regional Medical Center and John Doe Entities 1-100 (collectively "Defendants"). On March 20, 2008, I entered an Order granting Debtor's request for injunctive relief. Below are the findings of fact and conclusions of law in support of my decision.[1]

---

[1]This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O). This Opinion constitutes the findings of fact and conclusions of law required under Fed. R. Bankr. P. 7052.

**Findings of Fact**

1.  Debtor is a corporation organized under the Pennsylvania Nonprofit Corporation Law of 1988, 15 Pa. C.S.A. 1502 et seq. At the time of the filing of its chapter 11 petition on January 25, 2006, Debtor operated a twenty-five (25) bed community hospital in Centre County Pennsylvania (the "Hospital"), located at 210 Loch Lomond Road, Philipsburg, Pennsylvania.

2.  Debtor leased from the Commonwealth of Pennsylvania, Department of General Services ("DGS") the land, buildings and appurtenances at 210 Loch Lomond Road (the "Facility") for the operation of the Hospital, pursuant to a lease dated March 1992 (the "Commonwealth Lease" or "Lease").

3.  The Debtor ceased operations at the Hospital on April 12, 2006.

4.  At the commencement of its bankruptcy case, Debtor's most significant assets were the equipment, furniture, supplies and other personal property used to operate and manage hospital operations and the Commonwealth Lease.

5.  On July 12, 2006, Debtor filed a Motion seeking authority to sell substantially all of its assets at auction, which was approved by Order of this Court on August 4, 2006. After Rosewood Real Estate, Inc. ("Rosewood") was determined to have submitted the winning bid, Debtor entered into a Purchase Agreement with Rosewood, which was approved by this Court on November 28, 2006. The parties thereafter amended the original Purchase Agreement by executing an addendum dated January 5, 2007. On April 24, 2007, a Consent Order was entered approving the Purchase Agreement as amended by the Addendum. (the "Amended Purchase Agreement").

2

6. Rosewood's sole principal is Lawrence G. Adams, M.D. ("Dr. Adams"). At the hearing on Debtor's motion for an injunction, Dr. Adams admitted that he is under criminal indictment, but he exercised his privilege under the Fifth Amendment in response to further questioning on this issue.

7. Rosewood, a for-profit corporation, does not have a board of directors. Dr. Adams and Rosewood formed a not-for-profit organization, Philipsburg Regional Medical Center ("PRMC"), for the purpose of operating a medical center at the Facility. An organizational meeting was held for PRMC's Board of Directors on February 19, 2008; no Board of Directors existed prior to this date. There are no written operating agreements between Rosewood and PRMC, and Rosewood has not entered into a sublease with PRMC for the use of the Facility.

8. On or about January 23, 2007, prior to closing on the sale of the Debtor's assets to Rosewood, there was a casualty loss at the Facility when one or more fresh water pipes broke and damaged the building.

9. On or about May 1, 2007, Debtor and Rosewood closed on the sale of the Debtor's assets. Contemporaneously, Dr. Adams signed a Promissory Note and Security Agreement (collectively, the "Loan Documents") on behalf of Rosewood, and Debtor assigned the Commonwealth Lease to Rosewood. The Acknowledgment of the Lease Assignment states that Rosewood shall be "entitled to all rights under the Lease and shall, and does hereby, assume all of the obligations of the tenant under such Lease." Rosewood also took an assignment of a casualty insurance policy dated December 29, 2006 between Evanston Insurance Company and Debtor.

10. Pursuant to the Loan Documents and the filed UCC filing statement, Debtor has a

first priority security interest in all of the assets transferred to Rosewood, including the Commonwealth Lease.

11. DGS inspected the Facility in November 2007 and prepared a site report that it submitted to Debtor on December 20, 2007. The report stated that the damage to the Facility inflicted as a result of the broken water pipes on January 23, 2007 had not been repaired, that there was no heat or water service at the Facility, and that the gas and water meters had been removed.

12. On December 21, 2007, Debtor filed a Complaint against Defendants commencing the present Adversary Proceeding.

13. In the Complaint, Debtor alleged that Defendants breached the Amended Purchase Agreement and the Security Agreement by failing to properly maintain and protect Debtor's collateral. Debtor also alleged that Rosewood was in breach of the Amended Purchase Agreement, the Loan Documents, and the Commonwealth Lease because it would not be able to commence operations of a hospital by February 1, 2008 due to lack of funding and licensure problems.

14. In its Answer to Debtor's Complaint filed January 3, 2008, Rosewood asserted that the Facility was adequately maintained, that Rosewood would commence operations on or before February 1, 2008, and that the payments due and owing to Debtor would be made in a timely manner. Rosewood did not address Debtor's allegations in regard to licensing.

15. Hearings on the request for injunctive relief were conducted on January 24, 2008; January 31, 2008; and February 21, 2008. Extensive testimony regarding the physical condition and maintenance of the Facility was presented by witnesses for Debtor, DGS and the Defendants. Debtor and Defendants filed briefs with proposed findings of fact and conclusions

4

of law on March 12, 2008.

16.     The Amended Purchase Agreement states that Rosewood "will have all required regulatory approvals for operation of the Business, and that operations can begin within six (6) calendar months of the Closing Date." In the Amended Purchase Agreement, "Business" is designated as a short-hand reference to Debtor's "Hospital business."

17.     Under the terms of the Purchase Agreement "[t]he failure of the Purchaser to begin operations at the medical care center within six (6) months of the Closing date" is an event of default. When the Purchase Agreement was amended, the deadline for commencing operations was extended to February 1, 2008.

18.     The Commonwealth Lease requires that the Facility be used to operate a general hospital as defined in 28 Pa. Code § 101.4. Paragraphs B. 5 and C. 3 of the Commonwealth Lease provide that Lessee shall continuously and without interruption operate a general hospital and may not curtail or change that function without prior express written approval of DGS.

19.     DGS, consistent with the Amended Purchase Agreement, agreed to allow Rosewood until February 1, 2008 to begin operating a hospital at the Facility. DGS did not further agree to waive the requirement in the Commonwealth Lease that a general hospital had to be continuously maintained at the Facility.

20.     In an attempt to comply with the requirement to begin operations by February 1, 2008, Dr. Adams moved his medical practice, Mid State Medical ("Mid State"), to the Facility prior to February 1, 2008. Dr. Adams and Rosewood did not seek authorization from DGS for Mid State to operate its business at the Facility. Rosewood has not formally subleased the Facility to Mid State.

21.     As of January 24, 2008, Rosewood and PRMC had not hired any employees, nor

5

had they engaged the services of any entity to maintain the Facility or to operate a hospital, including services such as maintenance, cleaning, security, and laboratory services. Dr. Adams admitted that he does not know when he will be able to open a licensed general hospital. There is no organized governing body vested with ownership to assume full authority for the operation of a hospital as required by 28 Pa Code § 103.1.

22. Dr. Adams testified that Rosewood and PRMC applied for licensing with the Department of Health in December 2006 and in June 2007. The June 2007 application was still pending on January 24, 2008. There is no evidence that Rosewood or PRMC has pursued licensing as a Medicare or Medicaid provider.

23. The Amended Purchase Agreement contains a cross default provision in Section 3.6 which provides that "[t]he obligations under this Agreement, the Promissory Note and Security Agreement shall be cross collateralized and cross defaulted such that a default under one is a default under the other."

24. The Promissory Note states, in part, that "an Event of Default shall occur under this Promissory Note if . . . (b) a default exists under the Purchase Agreement and/or Security Agreement . . . ."

25. Section 9 of the Security Agreement includes as an event of default the failure of Rosewood "to perform, keep or observe any term, provision, condition, covenant, or agreement, contained in this Agreement, the Purchase Agreement, the Promissory Note, or any other present or future agreement between Borrower and Lender; . . ." or to fail "to perform, keep or observe any term, provision, condition, covenant, or agreement, contained in the [Commonwealth] Lease . . . ."

26. Rosewood's obligations under the Security Agreement regarding maintenance are

set forth in Section 7, Borrower's Affirmative Covenants, which reads, in part:

       7.3     Maintenance of Collateral, Lease and Leasehold Interest.

(a) Borrower shall keep and maintain the Equipment in good operating condition and repair so that the value and operating efficiency thereof shall at all times be maintained and preserved. . . .

27. Under the Lease Assignment, Rosewood is required to comply with the following covenants: (1) keep the demised premises in a clean, safe and healthful condition; (2) provide, at its sole expense, heat, electricity, water and other services and remove all trash and hazardous waste; (3) provide for security of the leased premises; (4) follow all applicable fire safety procedures; (5) maintain professional management and capital resources acceptable to DGS for operation and maintenance of the leased premises.

28. Rosewood has undertaken renovations and repair work on the Facility, but the majority of this work took place after Debtor filed the Complaint seeking injunctive relief. Rosewood did not receive approval from DGS for any of the renovations commenced at the Facility.

29. With the exception of the "Nursing School," Debtor was providing heat to the Facility when Rosewood inspected the property prior to closing on the sale. When DGS conducted an inspection of the Facility in November 2007, no heat was being provided to any part of the Facility. Rosewood has not operated the boilers at the Facility since it closed on the sale in May 2007.

30. At the time of the hearings on Debtor's request for injunctive relief, only the "Rehabilitation Wing" had a source of heat other than space heaters. At the February 21 hearing, witnesses for both Plaintiff and Defendants observed that box fans were placed at the entrance of the heated portion of the Rehabilitation Wing to move heated air into unheated portions of the

7

Case 1:07-ap-00176-RNO   Doc 46   Filed 04/01/08   Entered 04/02/08 09:10:22   Desc
Main Document      Page 7 of 16

Facility. The unheated sections of the Facility have been subjected to damage from cold temperatures.

31. Testimony offered at the hearing was conflicting as to whether the Facility had suffered significant structural damage due to the lack of heat, but the current system is not adequate to heat the entire structure.

32. Rosewood has continuously maintained insurance on the equipment and the leasehold premises.

33. The Commonwealth Lease provides that DGS must give Rosewood written notice of an alleged breach and ninety (90) days to cure before taking action to terminate the Lease. DGS sent a notice of default to Rosewood on December 21, 2007. At the hearing on February 21, DGS stated that it was the Commonwealth's position that defaults under the Lease had not been cured and that if the defaults were not cured on or before March 21, 2008, it would notify Rosewood that the Lease was being terminated effective in thirty (30) days.

34. Neither Rosewood nor PRMC have a written commitment for financing that is sufficient to enable the hospital to open and to begin providing services. Richard A. Behrens, Esq., Rosewood's counsel, testified that as of February 1, 2008 the sum of $600,000.00 was available to be used as a bridge loan in order to meet Rosewood's obligations. The funding alleged to be available was based upon an agreement entered into between Glenn Adams, Dr. Adams' father, and the Adams Acquisition Trust. The agreement between Glenn Adams and the Adams Acquisition Trust does not specifically commit funds to Rosewood or to PRMC. Behrens testified on February 21, 2008 that Rosewood had funds available to make the $125,000.00 installment payment due on March 31, 2008.

35. Pursuant to the Amended Purchase Agreement, Rosewood is required to maintain

8

the medical records housed at the Facility according to state and federal guidelines. Evidence was presented that some medical records in Rosewood's custody are not being property maintained.

**Conclusions of Law**

A preliminary injunction is appropriate only in extraordinary circumstances. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002)(citations omitted). In considering whether to grant a preliminary injunction, the Court of Appeals for the Third Circuit has directed courts to consider four factors: 1) the likelihood the moving party will succeed on the merit at the final hearing; 2) the extent to which the moving party will be irreparably harmed by the defendant's conduct; 3) the extent to which the non-moving party will be irreparably harmed by the issuance of the injunction; and 4) the public interest. *McNeill Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356-57 (3d Cir. 2007); *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006). All four factors must be considered by the court when weighing a request for injunctive relief. *Rehabworks, Inc. v. Lee (In re Integrated Health Services, Inc.*), 281 B.R. 231, 235 (Bankr. Del. 2002) (citing cases).

(a)     *Likelihood of success on the merits*

Debtor asserts that it will be able to succeed on the merits of its complaint because Rosewood has breached the Amended Purchase Agreement, the Loan Documents executed in connection with the Amended Purchase Agreement, and the Commonwealth Lease, which Debtor assumed and assigned to Rosewood. DGS, which joined in Debtor's motion for injunctive relief, also alleges that Rosewood breached the Lease. Rosewood argues that that it is not in breach and has improved the physical condition of the Facility since taking possession. In

9

the alternative, Rosewood argues none of the parties expected that it would comply with the terms of the Commonwealth Lease because DGS waived compliance by entering into negotiations for a new lease agreement with Rosewood.

Approximately six months after it filed for protection under chapter 11, Debtor sought permission from the Court to sell substantially all of its assets at an auction scheduled for August 16, 2006. Rosewood, the successful bidder, entered into the Purchase Agreement with Debtor on October 17, 2006, which was approved by the Court on November 28, 2006. As part of the sale, Debtor agreed to transfer to Rosewood equipment, furniture, supplies, and other personal property used by Debtor in the operation of the Philipsburg Area Hospital. The most significant asset transferred to Rosewood was the Commonwealth Lease for the property on which the hospital was located. Rosewood executed a Promissory Note and Security Agreement granting Debtor a first lien on the assets sold to Rosewood to secure its performance under the Purchase Agreement.

To establish that it has a reasonable probability of success on the merits, Debtor was required to demonstrate that it was likely to prevail on its breach of contract claim against Rosewood. Under Pennsylvania law, to find a breach of contract, a court must find: a) the existence of a contract, including its essential terms, b) a breach of a duty imposed by the contract, and c) damages as a result of the breach. *Ware v. Rodale Press, Inc*., 322 F.3d 218, 225 (3d Cir. 2003) (cited in *Chicago Title Insurance Co. v. Lexington & Concord Search and Abstract, LLC*, 512 F. Supp. 2d 304, 314 (E.D. Pa. 2007)).

In support of its assertion that Rosewood has breached the Amended Purchase Agreement, Debtor states Rosewood failed to begin operations at the Facility by February 1,

10

Case 1:07-ap-00176-RNO    Doc 46    Filed 04/01/08    Entered 04/02/08 09:10:22    Desc
Main Document    Page 10 of 16

2008.[2] Debtor interpreted this provision as requiring Rosewood to begin operations as a hospital through its non-profit affiliate, PRMC, by the specified date. Rosewood argues that it complied with this provision when Dr. Adams began operating his medical practice out of the Facility in February 2008. Because the Amended Purchase Agreement referred to operations at the hospital as a "medical center" and not a hospital, Rosewood asserts that the opening of any medical service meets this requirement. Rosewood's witnesses at the hearing stated repeatedly that a "medical center" is a broader category than a general hospital and would include other related businesses like a medical practice. Debtor and the Commonwealth have insisted that the Commonwealth would not have agreed to the assumption and assignment of the Lease, which was in default at the time of the sale, and Debtor would not have sold its assets to Rosewood, if Rosewood had not intended to open a general hospital by February 1, 2008.

Although the Court agrees with Rosewood that "medical center" is a more expansive term than "hospital," other provisions in the Amended Purchase Agreement support the position the consideration for the Agreement, at least in part, was that Rosewood would have a hospital up and running by February 1, 2008. In particular, the original Purchase Agreement states that Rosewood "will have all required regulatory approvals for operation of the Business, and that operations can begin within six (6) calendar months of the Closing Date." Although the Amended Purchase Agreement extended the date upon which operations were to commence to February 1, 2008, in both the original and amended versions of the Purchase Agreement the parties use the term " Business" as short-hand for Debtor's "Hospital business."

Rosewood argues that DGS led Rosewood to believe that a new lease would be

---

[2]Debtor does not allege that Rosewood has failed to meet any of its financial obligations under the Amended Purchase Agreement. No payments are due on the base purchase price until March 31, 2008 when a payment of $125,000.00 will become due.

negotiated to replace the Commonwealth Lease and that neither party expected that Rosewood would be required to perform under the assumed Lease. This may have been Rosewood's hope, but this understanding was not memorialized in any of the agreements executed in connection with the assignment of the Commonwealth Lease. The Commonwealth was not under any obligation to renegotiate the Lease, which extends to March 2012, or to enter into a new lease with Rosewood or PRMC. Accordingly, I find that Rosewood has breached the requirement of the Amended Purchase Agreement and, by incorporation the Commonwealth Lease, to open a general hospital by February 1, 2008.

Debtor also argues that Rosewood has breached the Loan Documents and Amended Purchase Agreement because it has not properly maintained the Facility or the personal property that was transferred to Rosewood as part of the sale. Shortly after the sale was approved by the Court, but before closing on the sale, there was water damage at the Facility. When the first hearing in this matter was convened in January 2008, Rosewood had not repaired the damage that occurred in January 2007 or obtained the proceeds of the assigned insurance policy to enable it to repair the damage. Further, Rosewood had breached the Commonwealth Lease by failing to maintain the premises "in a clean, safe and healthful condition;" by failing to maintain heat, electricity, water and other services; by failing to maintain appropriate security at the Facility; and by failing to obtain "professional management and capital resources acceptable to DGS for the operation and maintenance of the [Facility]."

After the complaint was filed, Rosewood undertook efforts to reconnect utilities, to provide heat to a section of the Facility, to clean up debris, and to begin repairs to damaged areas of the structure. Although Rosewood remains in breach of the Commonwealth Lease, it has taken some steps to address deficiencies, but scant evidence was provided that other significant

12

obstacles to the opening of a hospital have been addressed. No evidence was presented that PRMC will be granted a license by the Department of Health, a critical prerequisite. Because Dr. Adams is under indictment, and he is the primary party associated with both Rosewood and PRMC, there is profound uncertainty as to whether Rosewood and/or PRMC will ever be able to obtain required licenses as long as these charges are pending against Dr. Adams.[3] Therefore, I find that Debtor has established more than a reasonable likelihood of success on the merits of its Complaint.

      *b.*     *Extent to which Debtor will be irreparably harmed if injunction not issued*

Debtor has established that it will suffer irreparable harm in the absence of an injunction. DGS has taken preliminary steps to terminate the Commonwealth Lease. Debtor does not dispute that it was in breach of the Lease when it was assumed and assigned to Rosewood. If the Lease is terminated, Debtor will lose its most valuable asset, the security interest it retained in the leasehold. If Rosewood does not make the payments as required under the terms of the Amended Purchase Agreement, Debtor has few remedies other than to reclaim its collateral, which, other than the leasehold, has limited value. Rosewood has minimal assets from which Debtor could collect damages if Rosewood fails to make the required payments under the Amended Purchase Agreement. Further, as a not-for-profit corporation, Debtor not only has an interest in obtaining payment under the terms of the Amended Purchase Agreement, but also in maximizing the

---

[3] At the January 24 hearing, Dr. Adams admitted that he was under indictment, but upon further questioning invoked his Fifth Amendment privilege against self-incrimination. Because this is a civil proceeding, reliance on the Fifth Amendment may give rise to an adverse inference against the party claiming the privilege. *S.E.C. v. Graystone Nash, Inc.,* 25 F.3d 187, 190 (3d Cir. 1994) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed.2d 810, 821 (1976)). The Court finds that because Dr. Adams is the sole shareholder of Rosewood, until the criminal charges against him are resolved, Rosewood will experience difficulty in obtaining the required licensing.

13

Case 1:07-ap-00176-RNO   Doc 46   Filed 04/01/08   Entered 04/02/08 09:10:22   Desc
Main Document   Page 13 of 16

chance that its assets will be used to provide needed medical services to the community.

        *c.*      *Extent to which Rosewood will be irreparably harmed by issuance of injunction*

Rosewood argues that it will be harmed if the injunction is issued because it has undertaken extensive efforts to renovate and maintain the Facility and to acquire equipment and supplies in order to commence operations. When its argument is stripped down to its essence, Rosewood seems to be arguing that the Court should ignore the deterioration of the Facility between the May 2007 closing and the filing of Debtor's complaint in January 2008 and focus on the efforts Rosewood has made since the January 24 hearing. Rosewood further argues that while it did not commence hospital operations by February 1, 2008, as Debtor and the Commonwealth allege that it was required to do, DGS never expected that Rosewood would meet this deadline. Rosewood's protestations are "too little, too late" and are "like the Captain and crew of the Titanic sitting around discussing how to design a better navigation system after they've already hit the iceberg!" *Floyd v. Hefner*, 2006 WL 2844245 (S.D. Tex.). Rosewood had nine months from closing to the February start-up date to take the steps required to meet its obligations under the Amended Purchase Agreement. Dr. Adams has no one to blame but himself for Rosewood's failure to perform as agreed.

When DGS inspected the Facility immediately before the Complaint was filed, the premises was unheated, the utilities had been disconnected, and the buildings and grounds had inadequate security. At the January 24 hearing, Dr. Adams responded with vague answers to questions about the ability of PRMC to begin operations as a hospital by February 1, 2008 and appeared to have minimal personal understanding and limited resources to ensure that the licensing and funding requirements were met. Most of the expenses incurred by Rosewood and/or Dr. Adams, other than the initial down payment at closing, appear to the Court to have

14

been made to stave off the entry of the injunction.

Rosewood can be compensated from the resale of the Debtor's collateral to the extent that its efforts have improved the condition of the leasehold or other collateral. In the absence of assurances that PRMC will be able to obtain a license to operate a hospital and that Rosewood or PRMC will obtain the necessary funding to commence operations before the Commonwealth terminates the Lease, the balance of the hardships favors Debtor. Therefore, injunctive relief is appropriate.

  *d. Public interest*

As to the fourth factor, the Court finds that the public interest weighs in favor of the Debtor's request for injunctive relief. There is a strong public interest in preserving the integrity of bankruptcy sales and in upholding court-approved agreements. *See Aerovox, Inc. v. Parallax Power Components, LLC* (*In re Aerovox*), 281 B.R. 419, 438 (Bankr. D. Mass. 2002). Promoting a successful reorganization serves the public interest. *In re Integrated Health Services, Inc.*, 281 B.R. at 239 (citing cases). Rosewood counters that the public interest will be served if it is allowed to continue in its efforts to establish a medical center at the Facility. While all parties agree that the public interest will be served if a hospital is reopened at the site, the Court is not convinced that any entity in which Dr. Adams is involved will be able to obtain the necessary licenses, funding and qualified staff to begin operations as long as criminal charges are pending. More important, DGS's efforts to terminate the Lease may be successful before Dr. Adams' status is resolved. If DGS is able to terminate the Lease, Debtor's efforts to maximize the value of its assets will be impaired. Debtor has met its burden to show that Rosewood breached the Amended Purchase Agreement, the Loan Documents and the Commonwealth Lease and,

Case 1:07-ap-00176-RNO Doc 46 Filed 04/01/08 Entered 04/02/08 09:10:22 Desc
Main Document Page 15 of 16

therefore, is entitled to exercise remedies specified in the agreements.[4] Accordingly, the public interest will be best served by granting the requested injunction.

## Conclusion

For the reasons set forth above, the Court entered an Order dated March 19, 2008 and amended March 20 granting in part the motion for a preliminary injunction filed by Debtor and joined in by the Commonwealth of Pennsylvania, Department of General Services.

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

Date: April 1, 2008

*This document is electronically signed and filed on the same date.*

---

[4] When a contract is breached, the injured party must first resort to the remedies specified in the contract. *In re MK Lombard Group I, LTD*, 334 B.R. 562 (Bankr. E.D. Pa. 2005) (citing *Reed v. Pittsburgh Board of Public Education*, 862 A.2d 131, 136 (Pa. Commonwealth Ct. 2004) (citing *Restatement (Second) of Contracts* § 33 comment b (1979)). The Amended Purchase Agreement provides as one remedy for default the acceleration of payments due under the Agreement. Although the Court entered an Order granting the requested relief, it explicitly reserves the right to dissolve the injunction if Debtor elects to accelerate the balance due under the Amended Purchase Agreement and this amount is paid by Rosewood in full and in cash.

16

Case 1:07-ap-00176-RNO    Doc 46    Filed 04/01/08    Entered 04/02/08 09:10:22    Desc
Main Document    Page 16 of 16