IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | CHAPTER 11 |
| MOSHANNON VALLEY CITIZENS, INC. : | |
| t/a PHILIPSBURG AREA HOSPITAL : | CASE NO. 1:06-bk-00095 MDF |
| Debtor : | |
| : | |
| MOSHANNON VALLEY CITIZENS, INC. : | ADV. NO. 1:07-ap-00176 MDF |
| t/a PHILIPSBURG AREA HOSPITAL : | |
| Plaintiff : | |
| : | |
| vs. : | Re: Motion for |
| : | Permanent Injunction |
| ROSEWOOD REAL ESTATE, INC., : | |
| LAWRENCE G. ADAMS, M.D., : | Docket No. 2 |
| PHILIPSBURG REGIONAL MEDICAL : | |
| CENTER & JOHN DOE ENTITIES 1-100 : | |
| Defendants : | |

## OPINION

Before me is the Complaint filed by Moshannon Valley Citizens, Inc. ("Debtor" or "Plaintiff") seeking a permanent injunction and an award of damages against Rosewood Real Estate, Inc. ("Rosewood"), Lawrence G. Adams, M.D. ("Dr. Adams"), Philipsburg Regional Medical Center ("PRMC"), and John Doe Entities 1-100 (collectively "Defendants"). Debtor brought this action alleging that Rosewood had breached the Amended Purchase Agreement under which Rosewood purchased substantially all of Debtor's assets as well as the Promissory Note and Security Agreement executed in connection with the sale.

On March 20, 2008, I entered an Order granting Debtor's request for a preliminary injunction.[1] Defendants were enjoined from transferring, destroying or disposing of assets Rosewood acquired pursuant to the Amended Purchase Agreement. Defendants also were

---

[1] An Order granting the request for a preliminary injunction was entered on March 19, 2008 and amended on March 20, 2008.

directed to vacate the facility known as the Philipsburg State Hospital (the "Facility"). Possession of the Facility had been acquired as part of the sale through the assumption and assignment of the lease. Trial on the permanent injunction was held on April 17, 2008 and an Order was entered April 18 granting judgment in favor of Plaintiff permanently enjoining Defendants and setting a hearing to assess damages. The findings of fact and conclusions of law set forth in my Opinion dated April 1, 2008, which followed several days of trial, are incorporated herein by reference. Below are additional findings of fact and conclusions of law in support of the April 18 Order.[2]

**Findings of Fact**

1. The Department of General Services, Commonwealth of Pennsylvania ("DGS") notified Rosewood [3] on March 26, 2008 that it was terminating the lease of the Facility based upon nine non-monetary breaches of the lease agreement.

2. DGS intends to obtain an order for ejectment in state court if Defendants have not vacated the premises by April 28, 2008.

3. Dr. Adams continues to serve as the sole shareholder of Rosewood, but he has resigned as a member of the Board of Directors of PRMC.

4. As the non-profit operating entity, PRMC has entered into an agreement with Rosewood to operate a medical center at the Facility for a "monthly rental of $1.50 per square foot, plus additional mutually acceptable increases or surcharges based on increased fuel and

---

[2]This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O). This Opinion constitutes the findings of fact and conclusions of law required under Fed. R. Bankr. P. 7052.

[3]Rosewood Real Estate, Inc. was referred to incorrectly as "Rosewood, Inc." in the notice.

utility costs, payable on a monthly basis beginning on the 30th day after the date when PRMC first begins to offer health care services to the public, and continuing on the same day of each month thereafter." DGS has not authorized Rosewood to sublet the Facility, or any portion thereof, to other entities. The lease agreement prohibits the lessee from subleasing the Facility without prior approval of DGS.

     5. Rosewood has entered into a contract with Dr. Adams' medical practice, Mid-State Medical, Inc. ("Mid-State) to provide primary health care services at the PRMC. Mid-State continues to conduct business from a section of the Facility.

     6. On March 3, 2008, PRMC retained Thomas D. Robinson to serve as president and chief executive officer. Robinson testified that PRMC is pursuing licensing as a critical access hospital. He further testified that PRMC expects that it will begin operations as a hospital by June 1, 2008.

     7. Rosewood's business advisor, Lawrence M. Savino, testified that PRMC has incurred expenses of $1,138,164.06 in connection with the development of the project, including $328,316.50 for building improvements, maintenance and repair and $586,531.61 in legal expenses.

     8. The boiler heating system is partially operational and gas service has been restored. The water pipe system has been partially repaired and upgraded.

     9. All personnel working on behalf of PRMC are independent contractors. There is no workers' compensation insurance coverage in place. PRMC has had preliminary conversations

3

with several professionals regarding employment at the hospital, but no personnel are under contract.

10. Various supplies, including laboratory chemicals, are out-of date and will need to be replaced prior to the opening of a hospital. In addition, certain equipment must be re-calibrated before a hospital can be operated.

11. PRMC has no long-term financing in place.

12. PRMC has not obtained licensing from the Commonwealth of Pennsylvania, Department of Health to operate a hospital.

13. Rosewood failed to make the installment payment of $125,000.00 that was due March 2008, but has placed the payment in escrow pending the outcome of this litigation.

## Conclusions of Law

The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a mere likelihood of success. *Amoco Production Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 546 (1987). The following four factors govern the Court's evaluation of whether to issue injunctive relief: (1) whether the plaintiff has demonstrated actual success on the merits; (2) whether the plaintiff will be irreparably injured by the denial of the requested relief; (3) whether granting the relief will result in greater harm to the defendants; and (4) whether granting the relief will be in the public interest. *McNeill Nutritionals, LLC v. Heartland Sweeteners LLC,* 511 F.3rd 350, 356-57 (3d Cir. 2007);*Am. Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ.,* 84 F.3d 1471, 1477 n. 2 (3d Cir.1996).

4

The evidence adduced at the hearing on the permanent injunction demonstrated that while Rosewood continues to clean up the facility and make improvements to its mechanical systems, there still are significant hurdles to surmount before a hospital can be opened at the site. Although Dr. Adams has finally sought out professional management for the facility, medical and support staff have not been retained The only services currently being provided out of the Facility are those related to Dr. Adams' general practice. Rosewood and its representatives have made numerous representations that the licensing required to operate a hospital are imminent, but no objective evidence was introduced to support these representations. No financing is in place that would enable a hospital to begin providing services before medical reimbursements have been received. The most pressing issue confronting Rosewood, however, is the ejectment action being pursued by DGS. If DGS succeeds in its ejectment action, Rosewood will be unable to move forward with establishing a hospital regardless of the outcome of this litigation. If DGS succeeds in its ejectment action and retakes the property, Debtor will be harmed because it will lose its security interest in leasehold.

Debtor has established that it is entitled to prevail on the merits in its breach of contract claim. It is indisputable that Rosewood breached a material provision of the Purchase Agreement – it failed to begin operating a hospital at the Facility by February 1, 2008. Further, Rosewood has been unable to establish that it will be able to commence operations within a reasonable time because: (1) it has breached the Commonwealth lease, and DGS is pursuing the state-court ejectment action; (2) it has inadequate financing to commence hospital operations; and (3) its operational affiliate, PMRC, has not obtained the necessary licensing to open and operate a hospital. Robinson's representation that the hospital will be ready to open June 1, 2008 is

5

Case 1:07-ap-00176-RNO    Doc 61    Filed 04/27/08    Entered 04/28/08 11:13:41    Desc
Main Document      Page 5 of 8

fanciful and is not supported by the evidence. It simply echos the pattern set by Dr. Adams at the first hearing on the motion for a preliminary injunction. Dr. Adams argued that he was commencing hospital operations, and thus meeting the requirements of the Purchase Agreement and the lease, by moving his medical practice into a section of the Facility. Clearly, a medical practice does not constitute a hospital and this was not what the parties had intended. The Court is equally skeptical that Rosewood will be able to open a facility by June 1. Rosewood did not open a hospital by February as required under the purchase agreement, and it is unlikely to do so any time soon.

       To its credit, Rosewood has used the period since the filing of Debtor's Complaint to work toward correcting the deficiencies that caused Debtor to seek injunctive relief in the first place. When Debtor filed its Complaint in December 2007 the facility was in shambles. Damage to the building, which had occurred from a ruptured water pipe in January 2007, prior to the closing on the sale, had not been repaired a year later. The premises was not heated and utility service had been terminated. Medical records were strewn on the floor and medical supplies were not secured. Between the time the Complaint was filed and the April 17, 2008 hearing, Rosewood repaired some of the damage to the facility, in particular damage to the boiler system. It also made improvements to the structure so that Mid-State could occupy part of the building. The problem with these efforts, however, it that they are too little, too late. Although Debtor breached the lease when it ceased operations prior to settlement on the sale of Debtor's assets to Rosewood, DGS agreed not to enforce the lease so that the Facility would continue to be used as a hospital by the assignee of the lease. When an inspection by DGS in November 2007 revealed that not only had Rosewood not moved forward toward opening a hospital, but rather had

6

allowed the condition of the Facility to deteriorate, DGS determined that it no longer was willing to forebear from enforcing the terms of the lease. Rosewood is in breach of the lease. DGS's decision to enforce the terms of the lease places Debtor's collateral in serious jeopardy.

Debtor will be irreparably harmed if it loses its rights in the lease. Without the lease as collateral, it is unlikely that Debtor would be able to obtain satisfaction of its claim against Rosewood because Rosewood has no assets. The creditors of Debtor's estate would be irreparably harmed because Debtor has no other assets available to satisfy their claims. Further, Debtor, a non-profit entity, filed chapter 11 rather than simply liquidating its assets in chapter 7 because it believed it had a fiduciary duty to work toward the goal of providing general hospital services in Philipsburg. If Debtor's interest in the lease is lost, DGS has stated that it is no longer committed to making the Facility available for use as a hospital and may sell the Facility at auction.

DGS has been firm in its position that Rosewood has breached the lease and that it intends to move ahead to eject Mid-State, and any other entity occupying the premises. If DGS is successful, the harm which Rosewood states it will suffer if a permanent injunction is issued will occur in any event. Therefore, I do not find that the balance of the hardships tips in Rosewood's favor. As I stated in my April 1 Opinion, to the extent that Rosewood has benefitted the estate, it can be compensated from the resale of Debtor's collateral.

All parties agree that the public interest will be served by the reopening of the Philipsburg hospital. They disagree, however, on whether Rosewood or Debtor is most likely to succeed in this endeavor. After consideration of the evidence presented and the arguments of the parties, I find that Debtor is in a better position to accomplish this goal.

For the reasons set forth above, a permanent injunction was issued in this case by Order dated April 18, 2008.

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

Date: April 27, 2008

*This document is electronically signed and filed on the same date.*

8