IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| MOSHANNON VALLEY CITIZENS, INC. t/a PHILLPSBURG AREA HOSPITAL | CHAPTER 11 |
| | CASE NO. 1:06-bk-00095-MDF |
| Debtor-in-Possession | |
| MOSHANNON VALLEY CITIZENS INC. t/a PHILLPSBURG AREA HOSPITAL | ADVERSARY NO. 1:07-00176-MDF |
| Plaintiff | |
| v. | |
| ROSEWOOD REAL ESTATE, INC., LAWRENCE G. ADAMS, M.D., PHILIPSBURG REGIONAL MEDICAL CENTER; ADAMS TRUST a/k/a ADAMS FAMILY TRUST, MID STATE MEDICAL SERVICES, and JOHN DOE ENTITIES 1-100 | |
| Defendants | |

## OPINION

### Procedural History

On December 21, 2007, Debtor filed a Complaint initiating the within action seeking injunctive relief (Count I) and damages for breach of contract (Count II). The Complaint alleged that Rosewood Real Estate, Inc. ("Rosewood") was in breach of the Purchase Agreement and related security agreements approved by the court on November 28, 2006. The Court approved the purchase by Rosewood of substantially all of the assets previously used by Debtor in the operation of a community hospital in Philipsburg, Pennsylvania.

Debtor filed with the Complaint a request for an emergency hearing to obtain preliminary injunctive relief barring Rosewood, Lawrence G. Adams, M.D. ("Adams") and Philipsburg Regional Medical Center ("PRMC") (collectively "Initial Defendants") from dissipating the assets that served as Debtor's collateral for payment of the purchase price. The most significant asset transferred was a lease agreement with the Pennsylvania Department of General Services ("DGS") for the real property on which the hospital had operated. An order granting a preliminary injunction was issued on March 19, 2008, and an amended order was issued on March 20, 2008. In these orders Initial Defendants were enjoined from transferring or dissipating Debtor's collateral and were ordered to vacate the hospital premises and to turn over the keys to Debtor. Shortly thereafter, DGS terminated the lease agreement. On April 18, 2008, the Court entered an order granting a permanent injunction against the Initial Defendants. The April 18 order was appealed to the district court, which denied the appeal on July 30, 2008. Having determined that Defendants had breached the Purchase Agreement, the Court set a separate trial on damages, which initially was scheduled for July 14, 2008.

On July 17, 2008, Debtor filed an Amended Complaint adding Defendants Adams Trust (the "Trust") and Mid State Medical Services (Mid State"). Debtor also asserted three new claims – to pierce the corporate veil/alter ego (Count II), for fraud (Count IV) and for turnover of assets (Count V).[1] In the Amended Complaint Debtor alleges that Rosewood, PRMC, the Adams Trust, and Mid State (collectively with Adams "Defendants")[2] are "solely owned and controlled by

---

[1]In the Amended Complaint, the breach of contract count was renumbered as Count III.

[2]The Amended Complaint also named Dairyland Healthcare Solutions, Inc. ("Dairyland") as a defendant but Debtor conceded at the December 18 status conference that Dairyland was not an alter ego of Adams and should not have been named in the Amended Complaint. Debtor has not requested leave to further amend the Amended Complaint to remove Dairyland as a

2

Adams," "are his alter egos[,] and exist merely as a front for Adams individually." Defendants filed an Answer to Debtor's Amended Complaint on August 8, 2008 and asserted affirmative defenses and a counterclaim, which Debtor answered on October 20, 2008.

The July 14 trial was adjourned to August 14, 2008 and later to December 18, 2008. Because of potential unresolved liability issues raised in the Amended Complaint, the Court convened a status conference on December 18 in lieu of a trial on damages. After the status conference, the court issued a scheduling order in which the parties were directed to file briefs on the issue of whether the additional counts in the Amended Complaint raised non-core matters. Debtor filed a brief; Defendants did not.

## Discussion

Whether a matter before a bankruptcy court is core or non-core must be determined by the court either sua sponte or upon the motion of a party. 11 U.S.C. § 157(b)(3). If the court determines that a matter is a core proceeding it is authorized to enter a dispositive order. 11 U.S.C. § 157(b)(1). "Core proceedings represent those disputes so intertwined with the bankruptcy process that Congress has the power under Article I of the Constitution to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits." *Krasny v. Pratpal Bagga (In re Jamuna Real Estate, LLC),* 357 B.R. 324, 329 (Bankr. E.D. Pa. 2006). Non-core, related to proceedings are matters in which the "outcome . . . could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). If the court determines that a matter is non-core, but otherwise is related to a title 11 case, it has jurisdiction to hear the matter, but may not render a final order

---

defendant.

unless agreed to by the parties. 11 U.S.C. § 157(c). In the absence of consent to entry of a final order, the bankruptcy court issues findings of fact and conclusions of law, which are submitted to the district court for the entry of the final order.  Therefore, it is necessary for this Court to determine whether it has jurisdiction to hear and decide all of the claims raised by Debtor as core matters or whether it has a more limited role.

      a.      *Count I – Injunctive Relief and Count III – Breach of Contract*

The Court agrees with Debtor's assertion that the Order approving the Purchase Agreement, whereby Debtor transferred its assets to Rosewood, is a core matter under § 157(b)(2)(N). Therefore, an action against Rosewood for breach of the Purchase Agreement also is core. *Laroche Industries, Inc. v. Orica Nitrogen LLC (In re Laroche Industries, Inc.)*, 312 B.R. 249, 253 (Bankr. D. Del. 2004); *J.B. Van Sciver Company v. William Cooper Associates, Inc.*, 73 B.R. 838, 844 (Bankr. E.D. Pa. 1987). *Accord Agri-Concrete Products, inc. v. Fabcor, Inc. (In re Agri-Concrete Products, Inc.)*, 153 B.R. 673 (Bankr. M.D. Pa. 1993)(post-petition breach of contract actions are core proceedings); *In re Tidwell Industries, Inc.,* 87 B.R. 345 (Bankr. E.D. Pa. 1988) (disputes regarding post-petition contracts are core proceedings). Likewise, the issuance of an injunction enforcing Debtor's rights under the security agreement executed in connection with the sale of Debtor's assets to Rosewood also is core under § 157(b)(2)(N).

      b.      *Count IV – Fraud*

In Count IV of the Amended Complaint, Debtor alleges that Defendants took possession of the hospital facility after the Purchase Agreement was approved by the Court and then failed to notify the utility companies supplying services to the hospital that Rosewood was responsible

for future utility charges.[3] Debtor alleges that Rosewood and the other Defendants incurred utility charges in excess of $50,000.00 while Defendants occupied the property, but the utilities remained in Debtor's name. The Court finds that Count IV is closely related both to the administration of the estate and to the liquidation of Debtor's assets and, thus, is a core proceeding under § 157(b)(2)(A) and (O).

      c.      *Count V – Turnover of Assets*

A debtor may seek turnover of assets of the estate under 11 U.S.C. § 542 when there is no dispute that the property subject to the turnover action is property of the estate. *Asousa Partnership v. Pinnacle Foods, Inc. (In re Asousa Partnership)*, 264 B.R. 376, 384 (Bankr. E.D. Pa 2001). Section 547 may not be used to determine the rights of parties, however, where the interest in property is disputed. *Tenet Healthcare Corporation v. Williams (In re Allegheny Health Education and Research Foundation)*, 233 B.R. 671, 677-78 (Bankr. W.D. Pa. 1999); *FLR Company, Inc. v. Brant Construction (In re FLR Company)*), 58 B.R. 632, 634 (Bankr. W.D. Pa. 1985). In Count V, Debtor seeks the turnover of " expensive medicinal (sic) equipment" and other unspecified assets. In its Answer, Defendants dispute that Debtor is entitled to the return of any property. Therefore, Debtor's action is not properly classified as a core turnover proceeding under § 157(b)(2)(E) because the parties dispute title to the assets. *See also Raven II Holdings v. Quest Title Company (In re W.S.F. – World Sports Fans, LLC)*, 367 B.R. 786, 793 ( Bankr. D. N.M. 2007)(citing In re Allegheny Health Education and Research Foundation, 233 B.R. at 677). However, the relief requested, although captioned as a turnover count, in substance is a

---

[3]Other than telephone services, the Amended Complaint does not specify what type of utility charges were incurred.

demand for rescission of the contract and the return of the assets remaining in Defendants' possession.[4] As with the demand for damages for breach of contract, the demand for rescission of the purchase agreement and the return of estate assets is core under § 157(b)(2)(N).

       *d.*       *Count II – Piercing the Corporate Veil/Alter Ego*

"Piercing of the corporate veil" is an equitable remedy in which a court disregards the corporate form and holds a corporation's principals directly liable for corporate debts. *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 333, n.6 (3d Cir. 2000). The alter ego doctrine applies when a party seeks to impose liability on an individual who controls a corporation that is directly liable to the plaintiff. *Id.* at 333 (citations omitted). The Third Circuit has observed that Pennsylvania law requires that a party seeking to pierce the corporate veil on an alter ego theory must establish that the controlling entity "wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham." *Culbreth v. Amosa (Pty) Ltd.*, 898 F.2d 13, 14 (3d Cir. 1990). The party requesting the court to ignore the corporate form must show that the controlled entity "acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons." *Id*. at 15.

Under Pennsylvania law, courts consider a non-exclusive list of factors when deciding whether to invoke the alter ego doctrine. These factors include: "the failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds

---

[4]Rescission may be ordered when the non-breaching party "has suffered a breach so material and substantial in nature that it affects the very essence of the contract and serves to defeat the objective of the parties." *Keenheel v. Commonwealth,* 134 Pa.Commw. 494, 502, 579 A.2d 1358, 1362 (1993).

from corporation by dominant shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross undercapitalization." *Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc.*, 758 F. Supp. 1054, 1059 (W.D. Pa. 1990) (citing *Galgay v. Gangloff*, 677 F. Supp. 295, 300 (M.D. Pa. 1987)) *cited in Eastern Minerals*, 225 F.3d at 333, n. 7.

In the within case, Debtor alleges that Defendant Adams used Rosewood, PRMC, the Adams Trust and Mid State "as mere instrumentalities" through which he conducted business and, thereby, shielded himself from liability. Debtor asserts that the alter ego doctrine should be invoked to prevent Adams from fraudulently insulating himself from liability in connection with the acquisition of Debtor's assets through the use of the other named Defendant entities. "[A]ctions to pierce the corporate veil, or alter ego action against the debtor corporation, are often considered non-core, 'related to' proceedings." *Phar-Mor, Inc. v. Coopers & Lybrand (In re Phar-Mor, Inc.),* 22 F.3d 1228, 1239 (3d Cir. 1994); *see also In re Jamuna Real Estate, LLC.*, 357 B.R. 324, 331 (Bankr. E.D. Pa. 2006). Alter ego claims are not core proceedings because they target the assets of a non-debtor. These claims are not created by the Bankruptcy Code, nor do they invoke concepts exclusive to bankruptcy cases. *In re G-L Holdings, Inc.* 295 B.R. 211, 217 (D. N.J. 2003). However, these claims are intertwined with the core counts in Debtors' Amended Complaint, therefore, Count II is a non-core, related to matter.

## Conclusion

The Court finds that Counts I, III, IV, and V are core proceedings and that Count II is a non-core, related to proceeding. Under 11 U.S.C. § 157(c), a bankruptcy court may not enter a final order in a related proceeding unless all the parties consent. Therefore, after trial in this

7

matter is concluded, the Court will issue a final order in the core matters, but will make findings of fact and conclusions of law for submission to the district court on Count II unless on or before June 4, 2009 the parties file a stipulation consenting to the entry of a final order by this Court.

By the Court,

Date: February 25, 2009

Bankruptcy Judge

*This document is electronically signed and filed on the same date.*